Roland Marx et al., Appellants, v Zoning Board of Appeals of Village of Mill Neck, Respondent.

Second Department, June 6, 1988

## APPEARANCES OF COUNSEL

*Brendan R. Marx* for appellants.

*Payne, Wood & Littlejohn (Daren A. Rathkopf* of counsel), for respondent.

## OPINION OF THE COURT

BALLETTA, J.

In this case, we are called upon to determine the question of whether a Village Zoning Board of Appeals has the authority to modify the conditions imposed by the Village Planning Board upon a subdivision plan approved by the Village Planning Board. For the reasons set forth herein, we conclude that it does not.

The petitioners herein are the owners of a five-acre parcel of land located on Frost Mill Road in the Incorporated Village of Mill Neck, Nassau County. The area is zoned for five-acre single-family use by the village's zoning ordinance (Building Zone Ordinance of Incorporated Village of Mill Neck § 400.6 [1]).

The premises are improved by the petitioners' primary residence, which is not at issue on this appeal, and another structure, which is at the center of the dispute. This second structure was an accessory dwelling comprised of three bedrooms, a living room, kitchen, dining room and two baths as well as a two-car garage and a loft area.

The subject property was originally on the westerly part of a 10.1-acre parcel known as the Weicker Estate. In 1979, the petitioners' predecessor in interest, Cuales Enterprises, Inc., had applied to the Planning Board of the Incorporated Village of Mill Neck for a subdivision of the estate.

On November 15, 1979, the Planning Board granted the application to subdivide the estate into two approximately equal parcels containing at least five acres as required by the zoning ordinance. As a result, the buildings on the proposed westerly lot (now the petitioners' property) did not comply with the 75-foot setback requirements of the ordinance: the primary residence had a 60-foot setback, while the second structure had only a 10-foot setback from the northerly property line. In granting the application to subdivide the estate, the Planning Board permitted both structures to remain. However, the Planning Board imposed the condition that the second structure could no longer be used as an accessory

dwelling or living quarters and could only be used for a garage and dead storage.

The petitioners and another individual, a Shawn Kennedy, purchased the subject premises in 1980.

After taking title to the property, the petitioners allegedly converted the second structure into a dwelling for Kennedy. Subsequently, the Village Building Inspector visited the premises and found that the buildings were being used in contravention of the restriction imposed by the Planning Board. The petitioners were then requested to cease and desist from using the premises illegally. Thereafter, at some point between 1980 and 1985, Kennedy conveyed her interest in the property to one Nicastro, and in April 1985 the petitioners acquired sole ownership of the property by purchasing Nicastro's interest.

The petitioners then appealed to the respondent Zoning Board for permission to use the second structure as an accessory dwelling having less than the required 75-foot setback mandated by the zoning ordinance, designating their application as an "appeal from the Planning Board Decision of November 15, 1979". A hearing was held on July 29, 1985, with respect to the application.

On or about September 12, 1986, the petitioners commenced the instant proceeding which sought a judgment, *inter alia,* directing the respondent Zoning Board to (1) redesignate the second structure as an accessory dwelling, (2) refund all taxes paid to date on the use of the premises as a dwelling, and (3) award them damages in an amount equal to the fair use value of the premises from the date that the building was restricted from use as a dwelling. It appears that as of September 1986 the respondent Zoning Board had not yet issued a decision with respect to the hearing held on July 29, 1985.

In its answer dated October 29, 1986, the respondent Zoning Board generally denied the allegations in the petition and, as an affirmative defense, stated that the petitioners' sole remedy was to make an application to the Planning Board. The respondent Zoning Board also issued a decision with respect to the application, in which it found that "it [was] without jurisdiction to vary the decision of the Planning Board", and directed that the petitioners' application "be heard before the Planning Board of the Incorporated Village of Mill Neck".

By judgment dated January 27, 1987, the Supreme Court, Nassau County (Oppido, J.), ruled that the respondent Zoning Board's decision that it was without jurisdiction was correct.

The court noted that the Planning Board, and not the Zoning Board, had been delegated the power to control the subdivision of land. Thus, the court stated that the Zoning Board "may not trespass upon the functions or duties of the Planning Board".

On this appeal, the petitioners contend that the Supreme Court misconstrued the authority of the Zoning Board to grant the relief requested. The respondent Zoning Board argues that the court did not err in holding that it had no jurisdiction to relieve the subject property of the restriction imposed by the Planning Board. We agree with the respondent's contention.

The resolution of the issue presented requires a study of the interplay between the closely related, yet distinct, zoning and planning functions of local government.

Through the exercise of its zoning and planning powers, a municipality is able to control growth and development so as to provide a sound neighborhood environment to its residents. Although municipal planning "may not, in a definitional or conceptual sense be identified with the power to zone, it is designed to complement other land use restrictions, which, taken together, seek to implement a broader, comprehensive plan for community development" *(Matter of Golden v Planning Bd.,* 30 NY2d 359, 372).

The purpose of municipal planning "is to preserve through a governmental agency a uniform and harmonious development of the growth" of the municipality *(Village of Lynbrook v Cadoo,* 252 NY 308, 314). The main tool of the municipal planner is the power to regulate the development of unimproved land through subdivision control. Subdivision control attempts to guide the systematic development of a community or area while "encouraging the provision of adequate facilities for the housing, distribution, comfort and convenience of local residents" *(Matter of Golden v Planning Bd., supra,* at 372). It "reflects a legislative judgment that the building up of unimproved and undeveloped areas ought to be accompanied by provision for roads and streets and other essential facilities to meet the basic needs of the new residents of the area" *(Matter of Brous v Smith,* 304 NY 164, 169). Subdivision control is aimed at protecting the community from an uneconomical development of land, and assuring persons living in the area where the subdivision is sought that there will be adequate streets, sewers, water supply, and other essential services (2

Anderson, New York Zoning Law and Practice § 21.02, at 64 [3d ed]).

On the other hand, the primary goal of municipal zoning is the development of a balanced, cohesive community which efficiently uses the municipality's available land. One of the basic purposes of zoning is to provide in an orderly fashion for the residents' need for various types of residential, commercial and industrial structures. The concern is whether the municipality as a whole will be a balanced and integrated community (see, Berenson v Town of New Castle, 38 NY2d 102, 109). However, zoning "has proven characteristically ineffective in treating with the problems attending subdivision", and thus the need for the Planning Board and its power to regulate subdivisions (Matter of Golden v Planning Bd., supra, at 372).

As stated in a leading text: "Zoning restrictions are principally designed to separate the uses to which land in various areas of the community may be put as well as to regulate density of population and the degree of proximity of buildings and structures by prescribing the size of the lots on which permitted uses may be operated and the location of buildings and structures on those lots. Subdivision regulations are employed to ensure that individual lots intended to be developed for such permitted uses may safely be used for such purposes and that the use of specific parcels as zoned will not impose the burden of expense upon the community or create health or other hazards" (4 Rathkopf, Zoning and Planning § 64.02, at 64-16 [4th ed]).

The statutory scheme established by the relevant State enabling statutes and the local zoning ordinance reflect this dichotomy between the zoning and planning functions of local government.

The Board of Zoning Appeals of a village is authorized to "hear and decide appeals from and review any order, requirement, decision or determination made by an administrative official charged with the enforcement of any [zoning] ordinances or local laws adopted pursuant to" Village Law article 7 (Village Law § 7-712 [2]). Pursuant to this appellate jurisdiction, the Board of Zoning Appeals "may reverse or affirm, wholly or partly, or may modify the order, requirement, decision or determination appealed from and shall make such order, requirement, decision or determination as in its opinion ought to be made in the premises and to that end shall have all the powers of the officer from whom the appeal is taken" (Village Law § 7-712 [2] [c]).

In accordance with Village Law article 7, the Board of Trustees of the Incorporated Village of Mill Neck adopted a local ordinance granting the respondent the above-delineated powers of appellate review of all determinations made by the Village Building Inspector "or other official charged with the enforcement" of the zoning laws (Building Zone Ordinance of Incorporated Village of Mill Neck § 810.1). The Village Building Inspector is in fact charged with the main responsibility for the enforcement of the zoning ordinance (Building Zone Ordinance of Incorporated Village of Mill Neck § 910.1).

When the applicable provisions of the ordinance are read together, it becomes clear that the Board of Trustees intended to grant the respondent Zoning Board appellate review power only over the determinations of the Building Inspector. This construction of the respondent Zoning Board's power is in keeping with Building Zone Ordinance of the Incorporated Village of Mill Neck § 840.1. That section of the ordinance, in pertinent part, provides that "[a]ll provisions of this ordinance relating to the Board of Appeals shall be strictly construed. The Board, as a body of limited jurisdiction, shall act in full conformity with all provisions of law and of this ordinance and shall observe all limitations contained therein".

In addition to its appellate jurisdiction over the decisions of the enforcement official, a Zoning Board of Appeals also has original jurisdiction to grant variances when a strict application of the zoning ordinance results in practical difficulty or unnecessary hardship to an individual property owner (Village Law § 7-712). As a corollary to the authority to both grant variances and to review the determinations of the enforcement official, a Zoning Board of Appeals also has the primary jurisdiction of interpreting the applicable zoning ordinance (see, Thurman v Holahan, 123 AD2d 687; Van Deusen v Jackson, 35 AD2d 58, affd 28 NY2d 608; Matter of Cohalan v Schermerhorn, 77 Misc 2d 23; Daly v Eagan, 77 Misc 2d 279).

However, there is nothing in the language of the enabling statutes or in the Building Zone Ordinance which would suggest that the respondent Zoning Board also has jurisdiction over subdivision plats. Indeed, it is readily apparent from the statutory scheme that Zoning Boards were to be excluded from the regulation of subdivision plats.

By statute, a Village Board of Trustees may authorize and empower the Village Planning Board to approve subdivision plats for the express "purpose of providing for the future

growth and development of the village and affording adequate facilities for the housing, transportation, distribution, comfort, convenience, safety, health and welfare of its population" (Village Law § 7-728 [1]). A subdivision plat simply consists of the " 'division of one tract [of land] into a number of smaller lots with eventual separate ownership of each such lot' " *(Riegert Apts. Corp. v Planning Bd.,* 57 NY2d 206, 211, quoting 2 Rathkopf, Zoning and Planning § 30.04 [1], at 30-13—30-14 [4th ed]). A subdivision may merely involve the division of a large parcel of property into two parcels (Rules & Regs of Planning Board of Incorporated Village of Mill Neck § 2), and a plan may be "with or without streets or highways" (Village Law § 7-728 [1]). This authority to supervise the character and improvement of a subdivision is consistent with the statutory provisions giving a Planning Board the power to prepare a comprehensive master plan for the future development of the village (Village Law § 7-722).

Where a Board of Trustees has expressly empowered it to do so, a Planning Board has a very limited power under certain circumstances to modify the applicable zoning regulations when it approves a subdivision (Village Law § 7-738). Even then, the Planning Board may only exercise such authority within the strict limitations placed upon it by the Board of Trustees for the particular subdivision under consideration *(see, Matter of Johnson v Moore,* 13 AD2d 984; *Daly v Eagan,* 77 Misc 2d 279, *supra).* "The issue of conformity with zoning regulations is within the primary jurisdiction of the * * * Zoning Board" *(Thurman v Holahan,* 123 AD2d 687, 688, *supra).* A developer whose plat has been approved by the Planning Board would still have to comply with the local zoning laws *(Matter of Northern Operating Corp. v Chamberlain,* 34 AD2d 686).

Insofar as the purposes and powers of a Zoning Board of Appeals and of a Planning Board are distinct and separate, the Village Law provides for direct review of their determinations by means of proceedings pursuant to CPLR article 78 (Village Law §§ 7-712, 7-740). "Accordingly, the decision of a duly empowered planning board regarding subdivision plat approval is final" *(Matter of Woodhull Assocs. v Board of Trustees,* 63 AD2d 677, 678; *see also, Orrell v Planning Bd.,* 66 Misc 2d 843; Rules & Regs of Planning Board of Incorporated Village of Mill Neck § 4 [G]).

It is clear, therefore, that the power to control the subdivision of land has been entrusted to Planning Boards and not to

Zoning Boards of Appeals. "[T]he function of the Planning Board as to the subdivision of land provides for an orderly and compatible enforcement of policy along the lines of fixed standards. The entrance of the Board of Zoning Appeals into this area of control would not only rupture the statutory scheme but also interrupt the enforcement of the policy designed by the Planning Board" *(Van Deusen v Jackson,* 35 AD2d 58, 62, *affd* 28 NY2d 608, *supra).*

This separation of powers between the two Boards has also been recognized in other jurisdictions which have considered this issue *(see, e.g., Planning Bd. v Koenig,* 12 Mass App 1009, 429 NE2d 81; *Noonan v Zoning Bd. of Review,* 90 RI 466, 159 A2d 606; *Seligman v Belknap,* 288 Ky 133, 155 SW2d 735).

Accordingly, in this case, the judgment appealed from, which confirmed the determination of the respondent Zoning Board of Appeals of the Village of Mill Neck that it was without jurisdiction to waive or modify a condition imposed upon a subdivision by the Planning Board, should be affirmed. The petitioners' proper remedy is to apply to the Planning Board for a lifting of the restriction, and, if the restriction is lifted, to reapply to the Zoning Board for a variance.

MOLLEN, P. J., KUNZEMAN and RUBIN, JJ., concur.

Ordered that the judgment is affirmed, with costs.