■ In the Matter of SAINT MARY'S HOSPITAL FOR CHILDREN, INC., Appellant, v COMMISSIONER OF THE NEW YORK STATE DEPARTMENT OF HEALTH et al., Respondents. [615 NYS2d 48] — In a proceeding pursuant to CPLR article 78 to review a determination of the respondents dated May 7, 1991, which denied the petitioner's applications for an increase of (1) the salaries of the petitioner's Executive Director and Administrator during the 1982 rate year and thereafter, and (2) the pharmaceutical costs it incurred from 1990 and onward, the petitioner appeals from a judgment of the Supreme Court, Queens County (O'Donoghue, J.), entered May 21, 1992, which denied the application and dismissed the proceeding.

Ordered that the judgment is reversed, on the law, with costs, the determination is annulled, and the matter is remitted to the respondent Commissioner of the New York State Department of Health for further proceedings consistent herewith.

The petitioner Saint Mary's Hospital for Children, Inc. (hereinafter St. Mary's) is a 95-bed pediatric hospital located in Bayside, in Queens County. Over 60 hospitals in the New York metropolitan area refer sick children to St. Mary's, whose patient population consists of children under the age 16 who generally fall into one of five categories: (1) children with birth defects or genetic disorders (*e.g.,* trisomies, spina bifida, and other neural tube defects); (2) children who sustain severe injuries or diseases (e.g., burns, injuries in auto accidents,

traumatic amputation, strokes, cerebral palsy, hemiplegia, degenerative disorders); (3) children with intractable asthma; (4) children with chronic medical problems *(e.g.,* diabetes, sickle cell disease, end-state renal disease requiring dialysis, cystic fibrosis); and (5) children who are terminally ill, usually with a life expectancy of less than one year. Ninety-nine percent of St. Mary's patients are on Medicaid.

In 1991, St. Mary's filed an appeal with the State for a review, *inter alia,* of (1) the Medicaid reimbursement rate for 1991, which applied a ceiling on its administrators' salaries; and (2) the reimbursement rate for its 1990-1991 pharmaceutical costs. The State denied St. Mary's appeal, on the ground that the issues raised therein constituted objections to the regulatory process and could not be resolved through the administrative rate appeal process.

Generally, a hospital's payment rate depends on its peer group category. However, the State has previously determined that St. Mary's is a "specialty facility" and comprises its own group (10 NYCRR 86-2.10 [i]). The State's determination took into account the "extensive nursing, medical, psychological, and counseling support services that St. Mary's Hospital provides to children with diverse and complex medical, emotional, and social problems".

The petitioner argues that implementation of new programs, made necessary by the increased requirements and treatment problems of the children, contributed to the need for the additional administrative position and the necessity that the position be filled by a board-certified pediatrician. Notably, both the position and salary which it pays conform with the practice followed at acute care facilities most comparable to St. Mary's. Further, the evidence offered shows that approximately 50% of the Executive Director's time is devoted to medical and not administrative duties.

The record is replete with facts establishing that the increasing requirements of the children necessitate more complex treatment programs, more expensive equipment, medications, and treatment. We find credible and logical the petitioner's contention that the increasing number of technological dependent children, *i.e.,* children with tracheostomies, gastrostomies, oxygen-dependent children, the increasing number of children diagnosed with genetic defects, and the increasing number of children diagnosed with AIDS, necessarily means increased intervention by multidisciplinary teams and interfacing with subspecialty units from referring medical centers. Moreover, the petitioner stresses that keeping up with such

changes and developing programs to handle such issues requires not only administrative skills but medical skills as well. Further, the petitioner states that these unique factors make St. Mary's more analogous to an acute care facility than to any other residential care facility. However, the State asserts, without a rational basis for its determination, that St. Mary's administrative costs should be comparable to the administrative costs of geriatric nursing homes.

Regarding St. Mary's pharmaceutical costs, the facility's reimbursement rate consists of using the actual operating costs experienced by the facility in 1983 (the base year). Then, the State arrives at a prospective rate by increasing allowable base year costs by a "trend factor" based on general economic indicators to account for inflation between the base year and the ensuing "rate year". While the State does not claim that St. Mary's is an inefficiently operated children's hospital, it argues that St. Mary's does not demonstrate that the increases in excess of inflation represent costs which must be incurred by efficiently and economically operated facilities. The petitioner counters the State's argument with strong evidence that the pharmaceutical costs have necessarily increased for the same reasons cited previously—that the level of care and treatment necessary for the children have increased based on their needs.

The Commissioner of the New York State Department of Health (hereinafter the Commissioner) is required to provide reimbursement at rates that "are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities" (42 USC § 1396 [a] [13] [A]; Public Health Law § 2807 [3]). The Commissioner has discretionary power to set and adjust rates (see, 10 NYCRR 86-2.12; *Matter of United Home for Aged Hebrews v Axelrod*, 201 AD2d 656), and applicable Federal and State statutes do not mandate any level of payments for administrative costs or pharmaceutical costs.

Although reimbursement rates are to be fixed by the State, not by the courts, it appears that the Commissioner's refusal to make any adjustment for the petitioner's "unique" situation is inconsistent with the intent of Congress and the Public Health Law. We find that the State's rejection of St. Mary's application for a waiver of the subject administrative cost ceilings violated 42 USC § 1396 (a) (13) (A) and Public Health Law § 2807 (3) because it failed to provide payments at rates which are "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated

facilities" and because the rates did not adequately take into account the unique circumstances of St. Mary's. The State's decision imposed a ceiling of $49,180 on administrator's salaries for the year 1991, which is the same as that used to cap the salaries of geriatric home administrators. This decision was wholly inconsistent with the State's determination that St. Mary's is a unique facility and the uncontroverted evidence that the Administrator and Executive Director must supervise a wide range of services typically not found in a geriatric nursing home setting. Therefore, the rates applied to St. Mary's are arbitrary and capricious.

For the foregoing reasons, we find that the reimbursement rates for pharmaceutical costs in 1990 and 1991, and the reimbursement rates for administrative salaries for 1982 through 1991 as applied to St. Mary's are without a rational basis and, further, are arbitrary and capricious. Accordingly, the judgment should be reversed, the Commissioner's determination annulled, and the matter remitted to the Commissioner for further consideration of St. Mary's applications in accordance herewith. Bracken, J. P., Lawrence, Ritter and Pizzuto, JJ., concur. [As amended by unpublished order entered Dec. 8, 1994.]